## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCHUYLKILL OPEN MRI, INC. t/a SCHUYLKILL MEDICAL IMAGING, INC., | : : : | No. 3:23cv1497 |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| MAMMOGRAPHY EDUCATORS, LLC, | : | |
| Defendant | : | |
| | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is Defendant Mammography Educators, LLC's motion to dismiss Plaintiff Schuylkill Open MRI, Inc.'s breach of contract amended complaint. The parties have briefed their respective positions, and the matter is ripe for decision.

## Background[1]

Plaintiff owns and operates a medical testing facility where patients are sent to undergo diagnostic testing. (Doc. 16, Am. Compl. ¶ 6). Defendant provides training and services for those who work at such medical testing facilities relating to the operation of equipment used for diagnostic testing. (Id. ¶

---

[1] These brief background facts are derived from plaintiff's amended complaint. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

7).  Such training includes mammography-positioning training. (Id. ¶ 8).

Defendant's website states: "We offer satisfaction-guaranteed training and

consulting services, a variety of areas your breast imaging site may be struggling

with." (Id. ¶ 9).  The website also states that the defendant "specializes" in

"common breast center challenges," including "ACR Accreditation Image

Review[.]" (Id. ¶ 10).

The parties entered into a written service agreement ("Service Agreement")

on March 31, 2022, pursuant to which defendant was to provide certain

mammography training and mammography testing skills to plaintiff's technicians.

(Id. ¶¶ 14,15).

It was of critical importance to plaintiff that its personnel receive necessary

and appropriate mammography conditioning training to meet the standards and

criteria of the American College of Radiology ("ACR") Mammography Credential

and Submission. (Id. ¶ 16).  Defendant was aware that it was important to plaintiff

that its personnel receive the appropriate training. (Id.)  Pursuant to the

agreement, defendant was to train and test plaintiff's mammography technicians

at plaintiff's Pottsville, Pennsylvania location on April 27 and 28, 2022, as part of

a Corrective Action Plan plaintiff had developed, and which was approved by the

ACR.  (Id. ¶ 22).

2

Plaintiff alleges, however, that defendant failed to completely and adequately train plaintiff's mammography technicians and thus breached the contract. (Id. ¶ 24). Per plaintiff, defendant also failed to assist the technologists to review scans and approve them as passable. (Id. ¶ 25).

As part of the ACR's accreditation process, plaintiff needed to be able to offer mammography testing, plaintiff's technicians needed to be able perform the testing, and plaintiff was required to pass an on-site survey performed by the ACR. (Id. ¶ 29). The technicians needed to perform scans for two days and provide acceptable images. (Id. ¶ 31). Plaintiff contracted with defendant to provide the instruction necessary for the technicians to pass the on-site survey by the ACR. (Id.) Defendant guaranteed that the technicians would be able to provide acceptable images through its training and oversight on the training dates in April 2022. (Id. ¶ 32). After the training occurred, and defendant had left plaintiff's facility, plaintiff's representative, Dr. Kenneth H. Fox, reviewed the images that the technicians took on the training dates and recognized that the images were deficient and would not pass ACR requirements. (Id. ¶¶ 35, 36). Plaintiff withdrew its application from the ACR process over concerns about the training its technicians had received from the defendant. (Id. ¶ 38). Thus, plaintiff did not obtain accreditation and could not perform the mammography it had

planned to do. (Id. ¶ 28).  As a result, plaintiff alleges that it suffered $267,361.00 in damages. (Id. ¶ 41).

In response to these allegations, defendant filed a motion to dismiss the amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 19).  The parties have briefed their respective positions, bringing this case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.  Plaintiff Schuylkill Open MRI, Inc. t/a Schuylkill Medical Imaging, Inc., is a citizen of Pennsylvania. (Doc, 16 ¶ 1).  Defendant Mammography Educators, LLC, is a citizen of California. (Id. ¶ 2).  Additionally, the amount in controversy exceeds $75,000.  Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over this case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states[.]"); 28 U.S.C. § 1441 (A defendant can generally move a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute).  As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply

4

to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of Review**

Defendant filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court

does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the

6

elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc.,

672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

**Analysis**

Plaintiff's amended complaint includes only one count, which alleges a

breach of contract claim against the defendant. (Doc. 16, Am. Compl. at 2).  To

successfully maintain a cause of action for breach of contract, the plaintiff must

establish: (1) the existence of an agreement, including its essential terms; (2) a

breach of a duty imposed by that agreement; and (3) damages resulting from the

breach. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone

Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016).

Defendant seeks to dismiss plaintiff's complaint on the following grounds:

1) plaintiff failed to identify a contractual provision that was breached by

defendant; 2) plaintiff materially breached the contract; 3) plaintiff's withdrawal of

its application for accreditation caused plaintiff's damages; and 4) the damages

requested by plaintiff are categorically unrecoverable. (Doc. 20, Def. Br. in Supp.

at 7).  For ease of disposition, the court will first address plaintiff's breach of

contract claim against defendant. The court will then address defendant's

arguments that plaintiff breached the contract.

7

## I. Breach of Contract by Defendant

### a. Breach of Duty

In support of its allegations, plaintiff attaches three exhibits to the amended complaint: 1) the Service Agreement between the parties, (Doc. 16-1); 2) the ACR letter approving plaintiff's Corrective Action Plan, (Doc. 16-2); and 3) plaintiff's letter to defendant in which plaintiff notifies defendant of its dissatisfaction with defendant's services. (Doc. 16-3).[2] Plaintiff asserts that the amended complaint includes specific averments of how defendant breached paragraph (e) of the Service Agreement. (Doc. 21, Br. in Opp. at 15).

Paragraph (e) of the Service Agreement states that the defendant would "provide individual instruction for each technologist with patients in the clinic setting, critiquing their position techniques and reviewing together the quality of their images" on the training dates in April 2022. (Doc. 16-1, p. 2). Plaintiff's allegations focus on the adequacy of the training defendant provided to plaintiff's mammography technicians in preparation for the testing required for the ACR submission. (Doc. 16, Am. Compl. ¶ 24). Per Plaintiff, defendant breached

---

[2] Courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b)(6) motion. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Where a document is integral to or explicitly relied upon in the complaint, it may be considered without converting a motion to dismiss for failure to state a claim into one for summary judgment under Rule 56. Doe v. Princeton Univ., 30 F.4th 335, 343 (3d Cir. 2022) (citations and internal quotation marks omitted).

paragraph (e) of the Service Agreement when it failed to properly review the images taken during the training, advise plaintiff's technicians of their unsuitability for the accreditation, and request the technicians to re-take them prior to the accreditation. (Id. ¶¶ 26, 33). When a party fails to perform any obligation imposed by the parties' agreement, the lack of performance is considered to be a breach of the agreement creating that obligation. John B. Conomos, Inc. v. Sun Co., Inc., 831 A.2d 696, 707-08 (Pa. Super. Ct. 2003), app denied, 845 A.2d 818 (Pa. 2004). Additionally, in Pennsylvania, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. Id. at 705–06 (citing Kaplan v. Cablevision of PA, Inc., 671 A.2d 716, 721–22 (Pa. Super. Ct. 1996)). Construing the facts pled in a light most favorable to the non-moving party, plaintiff has thus sufficiently pleaded that defendant breached paragraph (e) of the Service Agreement.

Plaintiff also contends that the parties' agreement required defendant to perform additional tasks under specific standards not expressly included in the Service Agreement. (Doc. 21, Br. in Opp. at 15-16). Per plaintiff, the Service Agreement does not encompass the parties' entire agreement. Rather, it merely provides a cursory overview of the training defendant promised to provide, as it lacks details about the specifics of the training. (Doc. 21, Br. in Opp. at 18).

The Service Agreement consists of one page enumerating the services offered by defendant during the two days of on-site training. (Doc. 16-1, p. 2). The Service Agreement states in relevant part:

> Mammography Educators is pleased to offer you the following services:
>
> a.  Two days of on-site training to include lecture, demonstration/workshop (as described below) and hands-on training with patients for 3 mammography technologies....
>
> c.  Hands-on positioning workshop with a live model following the lecture and an opportunity for each technologist to practice positioning with immediate feedback ....
>
> e.  Individual instruction for each technologist with patients in the clinic setting, critiquing their positioning techniques and reviewing together the quality of their images.
>
> f.  Documentation of training:  [plaintiff] will be provided with a letter stating that [its] facility has successfully completed hands-on mammography positioning training ([plaintiff] will need to provide this letter to the ACR).

(Id.)

In addition, plaintiff's complaint references defendant's website stating that the defendant "specializes" in "common breast center challenges," including "ACR Accreditation Image Review[.]" (Doc. 16, Am. Compl. ¶¶ 10).  Plaintiff asserts that "[d]efendant promised that through its training and oversight on those two days," plaintiff's technicians would properly and competently perform

10

scans resulting in images of suitable quality to be submitted to the ACR for accreditation. (Id. ¶ 32). Following plaintiff's logic, the parties' agreement required the defendant to ensure that the scans taken by plaintiff's technicians were of suitable quality to obtain accreditation. Otherwise, defendant was required to order the technicians to re-take the images to ensure that they meet the required standard. By failing to do so, the defendant allegedly breached its obligations under the contract. According to plaintiff, since the scans did not meet the required standards, plaintiff was unable to use them to complete its ACR accreditation.

On the other hand, defendant argues that plaintiff's complaint fails to identify a contractual provision that was breached. (Doc. 20, Def. Br. in Supp. at 8-12). Defendant contends that plaintiff received all it was entitled to under the parties' agreement, namely the required training course from the defendant. (Doc. 20, Def. Br. in Supp. at 11). Defendant also denies that any guarantees or promises were made to plaintiff regarding passage of the ACR accreditation upon completion of the training. (Id.)

In defendant's reply brief, it argues that the Service Agreement includes the parties' entire agreement and that plaintiff failed to raise any basis for looking beyond the four corners of that document. (Doc. 23, Def. Reply Br. at 5). To determine whether or not a writing is the parties' entire contract, the court must

11

review it and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties[.]" <u>Yocca v. Pittsburgh Steelers Sports, Inc.</u>, 854 A.2d 425, 436 (Pa. 2004) (quoting <u>Gianni v. R. Russell & Co.</u>, 126 A. 791, 792 (Pa. 1924)).

If the contract includes an integration clause, then it is meant to represent the entire agreement between the parties. <u>Id.</u> (citing <u>HCB Contractors v. Liberty Place Hotel Assocs.</u>, 652 A.2d 1278, 1279 (Pa. 1995)). An integration clause triggers the applicability of the parol evidence rule. <u>McGuire v. Schneider, Inc.</u>, 534 A.2d 115, 117-18 (Pa. Super. Ct. 1987), <u>aff'd</u>, 548 A.2d 1223 (Pa. 1988) (citing <u>National Cash Register Co. v. Modern Transfer Co., Inc.</u>, 302 A.2d 486, 489 (Pa. Super. Ct. 1973)). The parol evidence rule prohibits the use of extrinsic evidence to add or modify an integrated contract's terms:

> Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.

<u>Yocca</u>, 854 A.2d at 436-37; <u>see also</u> <u>SodexoMAGIC, LLC v. Drexel Univ.</u>, 24 F.4th 183, 213 (3d Cir. 2022).

"Whether a writing is an integrated agreement, and if so, whether the agreement is completely or partially integrated, are questions to be decided by the court prior to application of the parol evidence rule." McGuire, 534 A.2d at 118 (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 209(2), 210(3) (A.L.I. 1981)).  Although the inclusion of an integration clause is strong evidence that the contract is fully integrated, its absence does not necessarily indicate that the agreement is not final or complete.  Mellon Bank Corp. v. First Union Real Est. Equity & Mortg. Invs., 951 F.2d 1399, 1414 n.6 (3d Cir. 1991).  Under Pennsylvania law, "[t]he presence of an integration clause cannot invest a writing with any greater sanctity than the writing merits [.]" Int'l Milling Co. v. Hachmeister, Inc., 110 A.2d 186, 191 (Pa. 1955).  The court must examine the text of an agreement to determine its completeness in the absence of an integration clause.  Henry v. First Fed. Sav. & Loan Ass'n, 459 A.2d 772, 776 (Pa. Super. Ct. 1983).

In the case at hand, plaintiff argues that the Service Agreement is not fully integrated. However, the absence of an integration clause from the Service Agreement does not automatically indicate that the agreement is incomplete. The Service Agreement could be a fully integrated agreement even if it does not contain an integration clause. Mellon Bank Corp., 951 F.2d at 1414.  Conversely, it could be partially integrated, or even incomplete.  At this stage of the

proceedings, noting an absence of an integration clause in the Service Agreement, it is difficult to rule on the finality and completeness of this agreement. Thus, the court will take plaintiff's allegations as true and assume the Service Agreement is not a completely integrated agreement. Defendant's arguments are unpersuasive at this stage but may be revisited on a motion for summary judgment.

Defendant further argues that plaintiff caused its own damages by withdrawing its ACR application. (Doc. 20, Def. Br. in Supp. at 17-18). The court, however, would need a fuller record to completely address this issue. At this juncture, the court can only note that plaintiff's ACR accreditation loomed over the relationship between the parties. Pursuant to paragraph (f) of the Service Agreement, defendant would provide plaintiff with a letter required for the ACR accreditation. (Doc. 16-1). The letter would state that plaintiff "successfully" completed the training. (Id.) Given the terms placed in the Service Agreement and the possibility that other information may inform this agreement, plaintiff has sufficiently alleged that the defendant's breach of the contract was the proximate cause of its damages. Defendant's motion to dismiss will thus be denied.

### b. Damages

In its amended complaint, plaintiff seeks damages for the loss of imaging revenues, lost future business, and expenses incurred while seeking

accreditation. (Doc. 16, ¶ 39). Defendant contends that these damages are unrecoverable as a matter of law. (Doc. 20, Def. Br. in Supp. at 17-18).

Breach of contract damages are classified as direct or consequential damages. Atl. City Assocs., LLC, v. Carter & Burgess Consultants, Inc., 453 F. App'x 174, 179 (3d Cir. 2011) (citing RESTATEMENT (SECOND) OF CONTRACTS § 347 cmt. c (1981)); see also Douglass v. Licciardi Constr. Co., 562 A.2d 913, 915 (Pa. Super. Ct. 1989) (adopting provisions of the Restatement as the general measure of damages in breach of contract cases). Direct damages represent a loss in value of the other party's performance, whereas consequential damages consist of collateral losses following the breach. Id. For instance:

> [I]f a services contract is breached and the plaintiff anticipated a profit under the contract, those profits would be recoverable as a component of direct, benefit of the bargain damages. If that same breach had the knock-on effect of causing the plaintiff to close its doors, precluding it from performing other work for which it had contracted and from which it expected to make a profit, those lost profits might be recovered as "consequential" to the breach.

Id. (quoting Penncro Assocs., Inc. v. Sprint Spectrum, L.P., 499 F.3d 1151, 1156 (10th Cir. 2007) (footnotes omitted)).

In opposition to the defendant's motion to dismiss, plaintiff argues that some of the damages requested are recoverable consequential damages. (Doc. 21, Br. in Opp. at 26). Plaintiff lists the loss of testing and imagining referrals from Dr. Timothy Grube caused by plaintiff's inability to perform mammography

scans as an example. (Id.) Defendant, however, disagrees with plaintiff's characterization of the lost gross revenue as consequential damages and argues that they are unrecoverable as a matter of law. (Doc. 23, Def. Reply Br. at 10). Defendant alleges that only net profits are potentially recoverable for certain breach of contract claims. (Id.)

"Pennsylvania allows consequential damages in the form of lost profits to be recovered." AM/PM Franchise Ass'n v. Atl. Richfield Co., 584 A.2d 915, 920 (Pa. 1990). Moreover, in cases where prospective damages are sought, courts have recognized that although proof of prospective damages might be difficult, such difficulty should not operate as an absolute bar to the claim itself. Id. at 927 n.19. Courts look for evidence that establishes a basis for the assessment of damages with a fair degree of probability. Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc., 22 A.2d 709, 713 (Pa. 1941). Although Pennsylvania law allows some uncertainty in calculating damages for a breach of contract, a plaintiff "must introduce sufficient facts upon which the jury can determine the amount of damages without conjecture." Ware v. Rodale Press, Inc., 322 F.3d 218, 226 (3d Cir. 2003) (quoting Delahanty v. First Pennsylvania Bank, 464 A.2d 1243, 1257 (Pa. Super. Ct. 1983). Anticipated lost profits for a "new and untried" business are too speculative and rarely awarded. Delahanty, 464 A.2d at 1261.

In the case at hand, neither party contends that the agreement includes provisions limiting recovery of certain damages or defining which damages qualify as consequential or direct. The question of whether the loss of testing and imagining referrals constitutes recoverable lost revenue or lost profits is too fact-intensive to resolve at this stage. Additionally, the distinction between direct and consequential damages is an issue of fact reserved for the jury. See Atl. City Assocs., LLC. 453 F. App'x at 181 n.1.

Plaintiff in this case also seeks restitution of costs incurred during the accreditation process. (Doc. 16, Am. Compl. ¶ 39). Per defendant, plaintiff's costs are not recoverable as a matter of law because they would still be incurred if plaintiff had successfully earned ACR accreditation. (Doc. 23, Def. Reply Br. at 11). Expenses sustained by the non-breaching party and resulting from its reliance on a contract or commitment constitute reliance damages. Nat'l Controls Corp. v. Nat'l Semiconductor Corp., 833 F.2d 491, 499 (3d Cir.1987). Reliance damages operate as an alternative to the recovery of lost profits, not a measure of additional damages. Id. (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 347, 349). Reliance damages are limited to those amounts which reasonably were expended in preparation of or during performance. Id. Generally, they should be the same as those which represent the non-breaching party's cost of performance in a calculation of expectation damages. Id. Hence, the non-

17

breaching party is entitled to recover "either reimbursement for its expenses or its net profits but not both." Id.

Whether plaintiff's costs resulted from its reliance on the contract with defendant is also an issue that cannot be resolved at this stage of the litigation. Ascertaining damages requires discovery and, as such, is not a matter suited for resolution on a motion to dismiss. Accordingly, defendant's motion to dismiss will be denied.

## II. Breach of Contract by Plaintiff

Defendant alleges that plaintiff breached the contract and violated a condition precedent when it failed to pay for defendant's services. (Doc. 20, Def. Br. in Supp. at 13). Generally, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citing Angelastro v. Prudential– Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985)). Defendant's brief in support of the motion to dismiss, (id.), and reply brief, (Doc. 23), introduce new facts which are not found in the amended complaint. Consequently, the court will not address arguments that plaintiff breached the contract at this time.

## Conclusion

For the reasons set forth above, defendant's motion to dismiss will be denied. An appropriate order follows.

18

Date: _6/20/25_


_____
JUDGE JULIA K. MUNLEY
United States District Court